**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                  )
**HENRY GETER,**                  )
                                  )
          **Plaintiff,**          )
                                  )
              **v.**              )          **Civil Action No. 13-916 (RC)**
                                  )
**GOVERNMENT PUBLISHING OFFICE,**  )
                                  )
          **Defendant.**          )
_____)

**MEMORANDUM OPINION**

     Plaintiff Henry Geter, a former employee of the Government
Publishing Office ("GPO"), alleges in a one-count complaint that
the defendant, the GPO, violated the Americans with Disabilities
Act ("ADA"), 42 U.S.C. § 12101, et. seq., and Title VII of the
Civil Rights Act of 1964, 42 U.S.C. § 2000e, et. seq.
Specifically, Geter, who purports to weigh nearly 300 pounds and
suffers from a back injury, claims that the GPO failed to
accommodate his disability, intentionally discriminated against
him after he engaged in statutorily protected activity, and
harassed him.  See Compl. at 1, 3, ECF No. 1.  Geter is also
suing the GPO for discrimination based on race and age and for
intentional infliction of mental harm.  See id.

     Geter filed his complaint on June 18, 2013.  See Compl.
The GPO filed a motion for summary judgment on July 8, 2015.

See Def.'s Mot. Summ. J. at 1, ECF No. 35.  Geter filed a memorandum in opposition to GPO's motion for summary judgment on July 22, 2015.  See Pl.'s Opp'n to Def.'s Mot. Summ. J. & in the Alt. Pl.'s Mot. Summ. J. ("Pl.'s Opp'n & Mot.") at 1, ECF No. 40.  The GPO filed a reply on August 3, 2015.  See Def.'s Reply Pl.'s Opp'n Def.'s Mot. Summ. J. ("Def.'s Reply") at 1, ECF 41. For the reasons set forth below, the GPO's motion for summary judgment will be granted.

The GPO moves for summary judgment on the claims of race and age discrimination, arguing that Geter failed to exhaust administrative remedies and has failed to contradict the fact that he did not exhaust his administrative remedies.  Def.'s Mot. Summ J. at 19-20.  Because Geter has failed to exhaust all administrative remedies and failed to contradict that fact, the GPO's motion for summary judgment will be granted on these two claims.

The GPO further moves for summary judgment on plaintiff's tort claim of intentional infliction of mental harm.  Id. at 18. The GPO argues that Geter failed to properly submit this tort claim to the GPO, an administrative agency, before filing a complaint and that Geter has failed to contradict that fact. Id.  Because Geter failed to submit an administrative tort claim of intentional infliction of mental harm to the GPO before filing a complaint in district court and has failed to respond

to the GPO's factual assertion that he has failed to do this, the GPO's motion will also be granted on this claim.

The GPO also moves for summary judgment on Geter's claim of retaliatory discrimination.  See id. at 10-18.  Because the GPO demonstrated that Geter cannot prove retaliatory discrimination, the GPO is granted summary judgment on that claim. Additionally, because Geter failed to show that he is a qualified individual under the ADA, summary judgment will also be granted for Geter's claim of failure to accommodate.

Finally, the GPO moves for summary judgment on Geter's retaliatory hostile work environment claim, arguing that Geter failed to establish that the GPO retaliated against him.  Id. at 13-18.  Because the GPO has demonstrated that Geter can establish neither a retaliatory hostile work environment claim nor a claim of harassment based on disability, the GPO's motion for summary judgment will also be granted on these two claims.


BACKGROUND

Geter has worked for the GPO on and off since 2002.  See Gregory Robinson Dep. Tr. (Aug. 28, 2014) at 13:12, Def.'s Mot. Summ. J. Ex. 3, ECF No. 35-3.  Geter started out as a helper to the motor vehicle operator but eventually was promoted to motor vehicle operator himself.  See id. at 15:7-8.  As a motor vehicle operator, Geter was required to have a valid commercial

driver's license and the ability to "load and unload by hand cartons weighing up to 50 pounds."  GPO Motor Vehicle Operator Job Description at 2 ("Job Description"), Def.'s Mot. Summ. J. Ex. 1, ECF No. 35-2; see also Aff. Henry Geter ¶ 3 (July 22, 2015), Pl.'s Opp'n & Mot. Ex. 9 ("Geter Aff."), ECF No. 40-3.

On March 25, 2009, Geter injured his back while on the job and eventually stopped working.[1]  See Mem. from Gregory Robinson to Office of General Counsel (Sept. 10, 2014), Def.'s Mot. Summ. J. Ex. 6 ("2014 Robinson Mem."), ECF No. 35-5.  On June 29, 2009, Gregory Robinson, Chief of the Delivery Section where Geter worked, sent a letter to Geter informing him that he was being fired for being absent without leave ("AWOL") and for violating GPO's leave policy.  See Letter from Gregory Robinson to Henry Geter (June 29, 2009), Def.'s Mot. Summ. J. Ex 7, ECF No. 35-6.  Geter's termination became effective August 6, 2009. See Settlement Agreement at 1 (Nov. 18, 2009) ("Settlement Agreement"), Def.'s Mot. Summ. J. Ex. 8, ECF No. 35-7.  Geter filed an appeal of the August 6, 2009 removal with the Merit Systems Protection Board ("MSPB") Washington Regional Office on September 4, 2009.  Id. at 5.  The GPO and Geter reached a

---

[1] This is not Geter's first injury while on the job.  The GPO claims that Geter has missed extended periods of time from work as a result of injuries sustained on "December 23, 2003; November 28, 2005; July 3, 2006; [and] June 21, 2007."  Def.'s Mot. Summ. J. at 3; see also 2014 Robinson Mem. at 1.

settlement with the GPO reversing the August 6, 2009 removal and reinstating Geter to his motor vehicle operator position.  Id. at 1-2.

The GPO had Dr. Kevin Hanley, a medical examiner for the Department of Labor Office of Workers' Compensation Programs ("OWCP"), evaluate Geter's physical health as a result of his March 25, 2009 injury.  Dr. Hanley issued a medical examination report on May 24, 2010 explaining that, due to Geter's March 25, 2009 injury and Dr. Hanley's desire to give Geter the benefit of the doubt, he would restrict Geter's lifting to 45 pounds.  See Dr. Kevin Hanley Med. Exam Rep. at 2 (May 24, 2010), Def.'s Mot. Summ. J. Ex. 2 ("Hanley Rep."), ECF No. 44.[2]  On June 7, 2010, Geter and his supervisors had a phone conference, and the GPO asked  Geter to return to work on June 21, 2010.  See E-mail from Gregory Robinson to Larry Brooks (June 7, 2010), Def.'s Mot. Summ. J. Ex. 9, ECF No. 35-8.  Geter refused to return to work.  See id.

---

[2] Dr. Hanley's report remains sealed, and the Court only refers to information that has previously been made public by the parties.  Dr. Hanley was very skeptical of Geter's injury. Dr. Hanley stated that a limitation was not called for unless he gave "some credence to [Geter's] subjective complaints."  Hanley Rep. at 2.  Dr. Hanley reported his impression that Geter had "absolutely no desire to return to work since he does not feel that it was his fault that his back got hurt in the first place."  Id.

The GPO sent Geter a job offer on June 14, 2010 for a "motor vehicle operator [position] with a restriction of not lifting more than 45 lbs. for six months." Letter from John Sturniolo to Henry Geter at 1 (June 14, 2010), Def.'s Mot. Summ. J. Ex 11, ECF No. 35-10. Geter believed that he was not yet physically fit to return to work, so he visited his personal doctor, Dr. Hampton Jackson, to treat his back injury. Dr. Jackson issued a report on June 15, 2010 that stated, due to the March 25, 2009 injury, Geter was "not to lift 65 pounds, push or pull 65 pounds" for six months. See Dr. Hampton Jackson Med. Exam Rep. at 1 (June 15, 2010), Def.'s Mot. Summ. J. Ex. 39 ("First Jackson Rep."), ECF No. 47. On June 24, 2010, Geter turned down the June 14, 2010 job offer. See Position Acceptance Form (June 24, 2010), Def.'s Mot. Summ. J. Ex. 13, ECF No. 35-12.

After Geter turned down the June 14 job offer, the OWCP sent a letter to Geter on July 14, 2010 "rejecting [the] June 15, 2010 report from Dr. Jackson" and "giving Geter 30 days to accept the position of truck driver" or face termination. Def.'s Mot. Summ. J. at 5; Letter from John Sturniolo to Henry Geter (July 14, 2010), Def.'s Mot. Summ. J. Ex. 14, ECF No. 35-13. Geter went back to Dr. Jackson to clarify that he was still not yet physically capable and ready to return to work. See Dr. Hampton Jackson Med. Exam Rep. at 1 (July 27, 2010), Def.'s Mot.

Summ. J. Ex. 39 ("Second Jackson Rep."), ECF No. 47.   Dr.

Jackson issued a report on July 27, 2010 that stated, due to the

March 25, 2009 injury, Geter should be on "lifting restrictions

[of] 10-15 pounds, but in light duty capacity.   Fifteen pounds

is his absolute limit[.]"[3]   Id.

On August 3, 2010, the OWCP terminated Geter's benefits

because he refused to accept suitable work, which the OWCP

contends is prohibited under 5 U.S.C. § 8106(c)(2).   See Notice

of Decision Letter from John Sturniolo to Henry Geter at 1 (Aug.

3, 2010), Def.'s Mot. Summ. J. Ex. 15 ("Notice of Decision"),

ECF No. 35-14.   Geter claims that he returned to work on August

6, 2010, see Pl.'s Opp'n & Mot. at 2, however, the GPO claims

that he returned to work on August 16, 2010, see Def.'s Mot.

Summ. J. at 5.[4]

---

[3] The plaintiff explains the discrepancy between Dr.
Jackson's early report, which restricted Geter's lifting to "65
pounds," and the later Dr. Jackson report, which restricted
Geter's lifting to "10-15 pounds," by stating, "[a]n early
Doctor Jackson report indicated a limit of 45 pounds but Doctor
Jackson made it clear in his July 27, 2010 report that the 45
pound restriction in a prior report was a typographical error
and the limit should have been no more than 15 pounds."   Pl.'s
Opp'n & Mot. at 2-3.   Because, we have to "draw all reasonable
inferences in favor of the nonmoving party" in the summary
judgment stage, then we will assume Dr. Jackson intended to
convey in his report that it is his opinion that Geter should be
placed on a lifting restriction of 10-15 pounds.   Reeves v.
Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000)
(citations omitted).

[4] Geter contradicts himself by stating that "on August 16,
2010 Geter reported to work on light duty[.]"   Pl.'s Opp'n &

Geter and the GPO differ slightly as to the events on
August 17, 2010 that give rise to Geter's current claims.
Geter's immediate supervisor is Gerald Simms.  Def.'s Mot. Summ.
J. at 4; Pl.'s Opp'n & Mot. at 2.  Both parties agree that Simms
ordered Geter to drive a GPO truck from the "lower lot up to the
[p]latform."  Pl.'s Opp'n & Mot. at 3; see also Def.'s Mot.
Summ. J. at 5 ("from the loading dock to the parking lot at GPO
and to bring back another vehicle."); Mem. from Gregory Robinson
to Henry Geter at 1 (Sept. 10, 2010), Def.'s Mot. Summ. J. Ex.
17 ("2010 Robinson Mem."), ECF No. 35-16.  In order to drive the
truck, Geter claims that he had to "pull himself up to get into
the truck."  Pl.'s Opp'n & Mot. at 3.  Geter claims that part of
the restriction that he lift no more than 10-15 pounds (light
duty) is that Geter never pull himself up into the truck,
because Geter weighs nearly 300 pounds which is more than 10-15
pounds.  Id.  Geter claims that when he informed Simms that he
was on light duty because of his March 25, 2009 injury and that
driving a truck violated his light duty restriction, Simms
"ordered him to drive the truck or clock out of work."  Id. at
4.  Geter claims that he then asked for a back brace but was

---

Mot. at 11.  In Gregory Robinson's affidavit, which Geter offers
in conjunction with his memorandum in opposition, Robinson
states, "[t]he only thing Complainant did from the time he
returned from August 6, 2010 to August 17, 2010 was the driving
task."  Aff. Gregory Robinson at 3 (Feb. 1, 2012), Pl.'s Opp'n &
Mot. Ex. 5 ("Robinson Aff."), ECF 40-2.

denied by Simms.[5]  Id.  "Simms then told him to go drive the

truck or be escorted out of the building by the GPO police."

Id. at 4.  When Geter eventually

> went to drive the truck [he] heard and felt a crack in
> his back when he pulled himself up by the truck
> handle.  Geter immediately felt severe back pain and
> spasms in his back.  When Geter informed Simms what
> happen [sic] and that he needed to go to the doctor to
> check his back Simms denied his request.  Simms told
> him that he had no leave or annual leave and that he
> was not hurt and to get back to work or he would be
> considered LOWP.  Geter continued to work in pain.

Pl.'s Opp'n & Mot. at 4; see also Geter Aff. ¶¶ 9-12.

> The GPO asserts in contrast that:

> Upon completing the assignment, Geter told his
> immediate supervisor, Mr. Simms, that climbing into
> the truck hurt his back.  When Mr. Simms asked if he
> was injured, Geter replied that he was not.  Both Mr.
> Simms and, later, Mr. Robinson asked Geter if he
> needed to go to the medical unit and both times he
> answered that he did not.

Def.'s Mot. Summ. J. at 5 (citations omitted); see also 2010

Robinson Mem.; Pl.'s Opp'n & Mot. at 11.

Geter claims that he "stayed at work form [sic] August 18 –

August 23, 2010, hurt and on light duty on the Platform and not

driving a truck in the delivery department."  Pl.'s Opp'n & Mot.

at 7.  On August 23, 2010,

> Simms again told Geter to get a truck even though he
> was still on light duty on August 23, 2010.  In this
> incident Simms directed Geter to get another truck

---

[5] Geter does not state whether a back brace was available on
site or whether a back brace has ever been prescribed to him by
a medical professional.  See Geter Aff. ¶ 10.

after he was injured getting a truck on August 17,
2010.  Not to get hurt further, Geter again refused to
drive a truck after being ordered by Simms.  Simms
ordered Geter to clock out and leave the building.
Mr. Geter complied with Mr. Simms [sic] order and went
home.  Mr. Simms docketed [sic] Mr. Geter 3 hours of
leave without pay for failing to follow [a]
supervisor's instructions[,] delay in carrying out
orders, work assignments and instructions of a
supervisor.

Id. at 11-12; compare Geter Aff. ¶¶ 10-13; with Def.'s Mot.

Summ. J. at 5 ("After these events, on August 23, 2010, Geter

refused to carry out an assignment to drive a truck with a

helper to deliver materials to Congress.").  Geter alleges that

"[w]hen Geter did not return to work in September 2010 [after

the August 17, 2010 incident], Gregg Robinson fired Plaintiff

Geter [a second time] for AWOL in November 2010."  Pl.'s Opp'n &

Mot. at 12; see also Compl. ¶ 9.

Geter sought counseling with the GPO's equal employment

opportunity ("EEO") office on October 7, 2010.  Pl.'s Opp'n &

Mot. at 9; Def.'s Summ. J. Mot. at 8; see also EEO Couns. Rep.

at 1, Def.'s Summ. J. Mot. Ex. 29, ECF No. 35-27.  Geter filed a

formal complaint of discrimination on November 19, 2010.  Pl.'s

Opp'n & Mot. at 9; Def.'s Summ. J. Mot. at 8; EEO Compl., Def.'s

Summ. J. Mot. Ex. 30 ("EEO Compl."), ECF No. 35-28.  "His

complaint alleged discrimination on the bases of physical

disability because of his back injury and retaliation and

harassment."  Pl.'s Opp'n & Mot. at 9; see also Def.'s Summ. J.

Mot. at 8.   The complaint was accepted in part and denied in part on July 25, 2011.   <u>See</u> Pl.'s Opp'n & Mot. at 9;[6] Def.'s Summ. J. Mot. at 8; Letter from Nadine Elzy to Donald Johnson at 3 (July 25, 2011), Def.'s Summ. J. Mot. Ex. 30A ("EEO Acceptance Letter"), ECF No. 35-29.   The GPO in its partial acceptance of Geter's EEO complaint reviewed the following claim:

> Whether the claimant was subjected to harassment (non-sexual) and unfair conditions of employment on the bases of retaliation and disability (physical). Specifically, he alleges that on September 1, 2010, during a meeting with management, he learned that they had ignored the medical restrictions imposed in the orders of the Department of Labor (DOL) physician, by assigning him the duties of a driver on August 17, 2010, which exceeded the 45 pound lifting restrictions.

EEO Acceptance Letter at 1; <u>see</u> <u>also</u> Def.'s Summ. J. Mot. at 8; EEO Decision at 2, Def.'s Summ. J. Mot. Ex. 31 ("EEO Decision"), ECF No. 35-30.

Geter has alleged that "[t]he EEOC did not reach a decision and Geter decided to opt out and file in this Court because of how long it was taking."   Pl.'s Opp'n & Mot. at 9.   However, "[o]n March 18, 2013, the EEO found in favor of GPO and dismissed all of Geter's claims."   Def.'s Summ. J. Mot. at 8;

---

[6] Plaintiff refers only to the acceptance of his EEO complaint, but the document itself makes clear that some of Geter's claims were dismissed.   <u>See</u> EEO Acceptance Letter at 3 ("The investigation of this complaint will not explore the dismissed claim.").

see also EEO Decision at 10.  Geter filed the instant action on June 18, 2013.  Compl. at 1.


## DISCUSSION

Under Rule 56 of the Federal Rules of Civil Procedure, a court may grant summary judgment if the pleadings and any affidavits or declarations show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(a).  The moving party bears the burden of demonstrating the absence of a genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The court "should review all of the evidence in the record . . . [and] draw all reasonable inferences in favor of the nonmoving party."  See Reeves, 530 U.S. at 150.  A genuine issue for trial exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  However, "[t]he mere existence of a scintilla of evidence" in support of a nonmoving party's position is not sufficient to create a genuine issue of material fact.  Id. at 252.  "Material facts are those that might affect the outcome of the suit under governing law[.]"  Nails v. England, 311 F. Supp. 2d 116, 121 (D.D.C. 2004) (citing America's Cmty. Bankers v.

FDIC, 200 F.3d 822, 831 (D.C. Cir. 2000)) (internal quotation marks omitted).

I.   RACE AND AGE DISCRIMINATION

The GPO moves for summary judgment on Geter's claims of race and age discrimination under Title VII of the Civil Rights Act.  Def.'s Summ. J. Mot. at 2.  Geter alleges in his complaint that, "[d]efendant and it [sic] representatives discriminated against the plaintiff based upon his . . . race and age." Compl. at 1.  The GPO argues that "plaintiff's allegations of race and age discrimination must be dismissed as neither claim was alleged at the administrative level."  Def.'s Summ. J. Mot. at 20.  The GPO also avers that the race and age discrimination claims must be dismissed, because Geter conceded those claims when he failed to respond to the fact that he did not raise the race and age discrimination claims at the administrative level. Def.'s Reply at 1-2.

Generally, if the non-moving party fails to respond to an argument and claims of facts raised in a motion for summary judgment, it is proper to treat the non-moving party's arguments and claims as conceded.  See Gordon v. District of Columbia, 605 F. Supp. 2d 239, 245 (D.D.C. 2009) ("Because of her failure to respond, plaintiff concedes the point."); Sykes v. Dudas, 573 F. Supp. 2d 191, 202 (D.D.C. 2008) ("[W]hen a party responds to

some but not all arguments raised on a Motion for Summary Judgment, a court may fairly view the unacknowledged arguments as conceded."). Recently, the D.C. Circuit has begun to back away from the view that a fact or argument is automatically conceded after a failure to respond. The D.C. Circuit has suggested that, "[t]he wiser course for district courts is to conduct an independent review of the record to determine whether there remains any genuine dispute over material facts. If not, the court should say as much without relying upon any concession by the nonmoving party." Grimes v. District of Columbia, 794 F.3d 83, 98-99 (D.C. Cir. 2015) (Griffith, J., concurring). The district court should focus on whether the nonmoving party has failed to contradict the facts as alleged by the moving party. Id. at 96 (citations omitted).

Any federal employee covered under the Civil Rights Act must exhaust administrative remedies before filing a complaint alleging race discrimination. See 42 U.S.C. § 2000e-16(c) (allowing civil action by employee or applicant for employment for redress of grievances within 90 days of receipt of notice of final action taken by a department); Doak v. Johnson, 798 F.3d 1096, 1099 (D.C. Cir. 2015) ("For claims against federal agencies, exhaustion requires submitting a claim to the employing agency itself.") (citations omitted); Bowden v. United States, 106 F.3d 433, 437 (D.C. Cir. 1997) ("Complainants must

timely exhaust these administrative remedies before bringing their claims to court.") (citations omitted).

The Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et. seq.,[7] requires a federal employee to exhaust administrative remedies before filing a civil suit alleging age discrimination in federal district court.  See Kennedy v. Whitehurst, 690 F.2d 951, 961 (D.C. Cir. 1982).  To properly exhaust administrative remedies under the ADEA, the complainant can either file his or her complaint with the agency, see 29 C.F.R. § 1614.105 ("Aggrieved persons who believe they have been discriminated against on the basis of . . . age . . . must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter."), or with the EEOC itself, see 29 U.S.C. § 633a(d) ("When the individual has not filed a complaint concerning age discrimination with the Commission, no civil action may be commenced by any individual under this section until the individual has given the Commission not less than thirty days' notice of an intent to file such action.").

---

[7] The plaintiff alleges age discrimination in his complaint, but only cites Title VII of the Civil Rights Act and the ADA. Neither Title VII of the Civil Rights Act nor the ADA provides relief for age discrimination.  Instead, the plaintiff should have cited the ADEA, which provides that "[a]ll personnel actions affecting employees or applicants for employment who are at least 40 years of age . . . in the Government Publishing Office . . . shall be made free from any discrimination based on age."  29 U.S.C. § 633a(a).

Summary judgment is granted in the GPO's favor for Geter's claims of race discrimination under Title VII of the Civil Rights Act and age discrimination under the ADEA, because Geter failed to exhaust administrative remedies as required by the statute and case law.  Geter failed to allege race or age discrimination in his initial claim to the GPO's EEO office. See EEO Compl. at 30; see also EEO Acceptance Letter at 1; Def.'s Summ. J. Mot. at 19-20.  Also, the record is devoid of any proof that Geter, alternatively, brought his age discrimination claim directly to the EEOC.  Because Geter failed to exhaust his administrative remedies prior to commencing district court litigation, the claims for age and race discrimination fail.[8]  Geter has not argued that any potential relevant equitable doctrines may be used as relief for his failure to meet the exhaustion requirement.  Carson v. Sim, 778 F. Supp. 2d 85, 95 (D.D.C. 2011) ("He offers no basis for finding that his failure to exhaust this claim is not fatal.").

---

[8] See Park v. Howard Univ., 71 F.3d 904, 907 (D.C. Cir. 1995) ("Title VII requires that a person complaining of a violation file an administrative charge with the EEOC and allow the agency time to act on the charge.  Only after the EEOC has notified the aggrieved person of its decision to dismiss or its inability to bring a civil action within the requisite time period can that person bring a civil action herself."); Nichols v. Truscott, 424 F. Supp. 2d 124, 134 (D.D.C. 2006) ("[A]lthough the complaint alleges facts going well beyond those underlying plaintiff's EEOC complaint, the plaintiff's discrimination and retaliation claims are limited to these six exhausted claims.").

Because Geter has failed to contradict the fact, as alleged by the GPO and supported by this Court's independent review of the record, that he failed to exhaust his administrative remedies for his race and age discrimination claims, these claims are dismissed.[9]  See generally, Pl's Opp'n & Mot.


II.  INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

The GPO also moves for summary judgment on the plaintiff's tort claim for intentional infliction of mental harm, because he has not exhausted his administrative remedies and conceded the claim when he failed to respond to the GPO's argument.  See Def.'s Summ. J. Mot. at 18; Def.'s Reply at 1-2; Compl. ¶¶ 11-12.  The Federal Tort Claims Act ("FTCA") requires a plaintiff to bring any tort claims, including intentional infliction of emotional distress, to the administrative agency that has wronged him or her before he or she can bring the action in district court.  28 U.S.C. § 2675(a).  The FTCA states:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have

_____

[9] Geter also is not a qualified individual under the ADEA, because he was not at least 40 years old at the time of the August 17, 2010 incident as is required under the ADEA.  See supra note 7; see also Dr. David Dorin Med. Exam Rep. at 1 (Nov. 8, 2012), Def.'s Mot. Summ. J. Ex. 26, ECF No. 44 ("DOB: 9/22/1972"); Hanley Rep. at 1 ("Mr. Geter is 37 years old.").

first presented the claim to the appropriate Federal
agency and his claim shall have been finally denied by
the agency in writing and sent by certified or
registered mail.

Id.; see also Hemingway v. State & Fed. Gov't, 561 F. App'x 12,

13 (D.C. Cir. 2014) (per curiam) ("Appellant has not identified

any error in the district court's dismissal of the complaint

based on his failure to satisfy the exhaustion requirement of

the [FTCA], a prerequisite to filing an FTCA complaint in

district court.") (citations omitted); Simpkins v. D.C. Gov't,

108 F.3d 366, 371 (D.C. Cir. 1997) ("[T]he Supreme Court has

held that the 'FTCA bars claimants from bringing suit in federal

court until they have exhausted their administrative

remedies.'") (quoting McNeil v. United States, 508 U.S. 106, 113

(1993)); McAllister v. Potter, 843 F. Supp. 2d 117, 123 (D.D.C.

2012) (exhausting "necessary administrative remedies under FTCA

. . . is a mandatory prerequisite" to bringing an FTCA claim)

(citations omitted).

Because Geter failed to submit to the GPO an administrative

tort claim encompassing his intentional infliction of mental

harm claim prior to this suit, he has failed to exhaust the

FTCA's administrative remedies.  See EEO Compl.; see also EEO

Acceptance Letter; Compl. at 1; Def.'s Summ. J. Mot. at 18.

Accordingly, summary judgment will be entered in favor of the GPO on this claim.[10]


III. ADA DISCRIMINATION - REASONABLE ACCOMMODATION

Because he can only raise administratively exhausted claims, Geter states in his response to the GPO's motion for summary judgment that the ADA[11] discrimination claim "is based

---

[10] It appears that plaintiff's tort claim would be precluded nonetheless. Because the Federal Employee Compensation Act, 5 U.S.C. § 8101, et. seq., "provides the exclusive 'liability of the United States . . . because of the injury,'" a federal employee may suffer in the workplace, an "independent lawsuit in federal court is precluded." Scott v. U.S. Postal Serv., 258 F. App'x 333, 333 (D.C. Cir. 2007) (citing 5 U.S.C. § 8116(c)); see also Spinelli v. Goss, 446 F.3d 159, 160-62 (D.C. Cir. 2006).

[11] It is a general proposition that the ADA does not cover federal government employees. See 42 U.S.C. § 121115(B)(i) ("The term 'employer' does not include—(i) the United States, a corporation wholly owned by the government of the United States, or an Indian tribe[.]"); Jordan v. Evans, 404 F. Supp. 2d 28, 30 (D.D.C. 2005) ("The federal government is not subject to claims brought pursuant to the ADA because the ADA expressly states that 'the term "employer" does not include the United States.'") (citing 42 U.S.C. § 121115(B)(i)); Jones v. Rumsfeld, Civil Action No. 5:05-CV-01100-KOB, 2014 WL 1329550, at *12 (N.D. Ala. Mar. 28, 2014) ("The proper vehicle for a claim of disability discrimination in federal employment is the Rehabilitation Act."). Instead, the proper vehicle for a federal employee's redress for discrimination is typically the Rehabilitation Act. 29 U.S.C. § 791, et. seq. But the GPO, as a legislative instrumentality of Congress, is covered by the ADA. Faison v. Vance-Cooks, 896 F. Supp. 2d 37, 45 n.2 (D.D.C. 2012). And "inasmuch as the GPO is a legislative branch agency, it is not subject to the Rehabilitation Act, which applies only to the executive branch and certain enumerated legislative agencies, not including the GPO." Id.; see also Collins v. James, 171 F. App'x 859, 860 (D.C. Cir. 2005) (per curiam) ("It is undisputed

solely upon Geter's EEOC filing in October 2010."  Pl.'s Opp'n &
Mot. at 10.  Based on Geter's EEOC filing, he can only bring
claims of failure to accommodate, retaliation, and harassment.

Geter's complaint and opposition contain nebulous and
equivocating language that fails to clearly set forth his
reasonable accommodation claim.  The language vacillates between
two different arguments: that the GPO discriminated against
Geter based on the GPO's failure to give him any accommodation;[12]
or, the GPO did provide Geter some reasonable accommodation but
failed to adhere to it.[13]  In any event, the most logical reading
of plaintiff's factual allegations is that the GPO gave Geter a
reasonable accommodation by placing him on light duty but the
GPO failed to adhere to it.

_____

that the Rehabilitation Act, by its own terms, does not apply to
the GPO[.]") (citations omitted).

    [12] Plaintiff uses language such as, "[t]hus, Geter alleged
in his complaint discrimination based upon violations of the ADA
because he was not reasonably accommodated for his March 25,
2009 injury, when he was ordered to drive the GPO truck."  Pl.'s
Opp'n & Mot. at 16.

    [13] Plaintiff uses language such as, the discriminatory act
was "failing to maintain his requested reasonable
accommodation," Pl.'s Opp'n & Mot. at 10, or "that GPO had
discriminated against him because his supervisor's [sic] ignored
the medical lifting restrictions imposed by two of Geter's
doctor's," Id. at 9, or "[t]he mere fact that Geter was placed
on light duty is a clear indication that he requested and was
given reasonable accommodations because of his back disability."
Id. at 6.

The Americans with Disabilities Act[14] prohibits any covered employer from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C.A. § 12112(a). Discrimination is defined as, "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C.A. § 12112(b)(5)(A) (emphasis added). A reasonable accommodation

> may include (A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

---

[14] Although plaintiff's complaint alleges a violation of Title VII of the ADA, the claim will be treated as a violation of Title I of the ADA. See Compl. at 1 & ¶¶ 2-3. It will be treated as such, because Title VII of the ADA does not exist -- the ADA only includes four subchapters.

42 U.S.C.A. § 12111(9).  A "qualified individual" as used in the statute is one who

> with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.  For the purposes of this subchapter, consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job.

42 U.S.C.A. § 12111(8).  A person is considered disabled if, "with respect to an individual—[he has] (A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment (as described in paragraph (3))."  42 U.S.C.A. § 12102(1). Major life activities include, among other things, lifting.  See 42 U.S.C. § 12102(2)(A).

To withstand summary judgment on his failure-to-accommodate claim, Geter must "come forward with sufficient evidence to allow a reasonable jury to conclude that (i) [he] was disabled within the meaning of the [ADA]; (ii) [his] employer had notice of her disability; (iii) [he] was able to perform the essential functions of [his] job with or without reasonable accommodation; and (iv) [his] employer denied [his] request for a reasonable accommodation of that disability."

Doak, 798 F.3d at 1105 (citing Solomon v. Vilsack, 763 F.3d 1, 9 (D.C. Cir. 2014)); see also Ward v. McDonald, 762 F.3d 24, 31 (D.C. Cir. 2014); Elzeneiny v. District of Columbia, 125 F. Supp. 3d 18, 37 (D.D.C. 2015); Adams v. District of Columbia, 50 F. Supp. 3d 47, 53 (D.D.C. 2014).  Because Geter fails to satisfy the standard required for a reasonable accommodation claim, the Court grants summary judgment in the GPO's favor.

Regarding the first element, the GPO claims that Geter is not a qualified individual with a disability, because Geter's disability "was not permanent, and is not enough to find that [Geter] was, at the time of the incident."  Def.'s Summ. J. Mot. at 11; Def.'s Reply at 2.  Congress reacted to earlier case law that restricted ADA coverage to only permanent disabilities as the government is attempting to do so here, Toyota Motor Mfg., Ky. v. Williams, 534 U.S. 184, 185 (2002) ("The impairment's impact must also be permanent or long term."), by passing the Americans with Disabilities Act Amendments Act ("ADAAA") which added to the ADA that "[a]n impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active."  42 U.S.C. § 12102(4)(D); see also Summers v. Altarum Institute, Corp., 740 F.3d 325, 333 (4th Cir. 2014) ("Under the ADAAA and its implementing regulations, an impairment is not categorically excluded from being a disability simply because it is temporary."); Hodges v. ISP

Techs., Inc., 427 F. App'x 337, 340 n.2 (5th Cir. 2011) (The
ADAAA "effectively superceded the Supreme Court's narrow
construction of 'disability' . . . and subsequent cases.");
Allen v. Baltimore County, 91 F. Supp. 3d 722, 731 (D. Md. 2015)
(finding that occasional flare ups qualify as a disability);
Tyler v. Comprehensive Health Mgmt., Inc., Civil Action No.
11C9296, 2015 WL 122754, at *4 n.5 (N.D. Ill. Jan. 6, 2015)
("Toyota was overturned legislatively with the passage of the
ADA Amendments Act[.]"), Nichols v. City of Mitchell, 914 F.
Supp. 2d 1052, 1057 (D.S.D. 2012) ("The . . . (ADAAA), which was
passed in 2008, explicitly rejects several Supreme Court
decisions that defined 'disability' more narrowly than many of
the ADA's original Congressional proponents had intended."
(citing H.R. Rep. No. 110-730, at 5 (2008))).  Therefore, there
is nothing on the face of the ADA, or included in the case law,
that requires the injury to be permanent for purposes of
bringing a claim under the ADA as the GPO suggests.  Rather, the
ADA covers non-permanent disabilities.

The ADA specifically includes lifting as a major life
activity.  42 U.S.C. § 12102(2)(A).  Geter had two different
doctors place restrictions on his lifting due to his March 25,
2009 incident when he injured his lower back.[15]  See Hanley Rep.;

---

[15] Both parties agree that Geter was placed on a lifting
restriction.  See Def.'s Summ. J. Mot. at 11-12; Pl.'s Opp'n &

First Jackson Rep. at 1; Second Jackson Rep. at 1.   Accordingly, Geter has shown that he is disabled within the meaning of the statute because his physical impairment substantially limits his ability to lift.

Regarding the second factor -- whether the GPO had notice of Geter's disability -- neither party asserts that the GPO did not have notice of Geter's back injury, weight lifting restriction, or body weight.   In fact, the record supports the fact that the GPO had its own doctor, Dr. Hanley, examine Geter, and Dr. Hanley concluded that Geter's lifting of weights should be restricted because of his back injury.   See Hanley Rep. at 2. In a footnote, however, the GPO disputes whether it received one of Dr. Jackson's reports.   See Def.'s Reply at 3 n.2.[16]   Geter argues that Simms's boss, Gregg Robinson, had notice of the plaintiff's weight lifting restrictions, see Robinson Aff. at 2 ("We became aware of Complainant's restrictions when he came back to duty on August 5th and 6th of 2010."), and that the GPO

_____

Mot. at 2.   The parties disagree about how much the weight restriction was because Dr. Hanley and Dr. Jackson set their weight restriction at two different weight amounts.   See Hanley Rep. at 2 (forty-five pounds); Second Jackson Rep. at 1 (fifteen pounds).

[16] It is unclear to which report the GPO is referring.   The sentence to which the footnote is appended references two of Dr. Jackson's reports, one on June 16, 2010 and another on July 27, 2010.   However, the phrasing of the footnote appears to refer to only a single report.   Both reports refer to Geter as injured. See First Jackson Rep.; Second Jackson Rep.

and Simms had received Dr. Jackson's July 27, 2010 medical report by August 2010.  See Notice of Decision at 1 ("On the other hand, your treating physician's 6/15/10 medical report stated . . . ."); see also Pl.'s Opp'n & Mot. at 6.  Therefore, Geter has adequately demonstrated that the GPO had notice of his disability.

Regarding the third prong -- whether Geter could have done his job with or without a reasonable accommodation -- the GPO argues that there is no genuine dispute of fact that Geter could not perform his job of motor vehicle operator with or without a reasonable accommodation.  And the Court agrees.

The ADA requires that, in order for a person to be a qualified individual under the statute, he or she must be able to perform the essential functions of his or her job with or without a reasonable accommodation.  See 42 U.S.C. § 12111(8) ("The term 'qualified individual' means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."); see also Woodruff v. Peters, 482 F.3d 521, 527 (D.C. Cir. 2007) ("[W]e must 'ask simply whether any reasonable accommodation would have allowed [Woodruff] to perform all the essential functions of [his] job without creating an undue hardship for the agency.'") (citations omitted) (alterations in original); Morris v. Jackson, 994 F. Supp. 2d 38, 46 (D.D.C.

2013) ("An individual who cannot perform the essential duties of his job, even with an accommodation, is not 'qualified' under the statue.") (internal quotation marks and citations omitted). The GPO contends that driving a truck is an essential function of Geter's job as a motor vehicle operator. See Def.'s Reply at 4 ("An essential function of a motor vehicle operator position at the GPO is to drive a truck."); Job Description at 2; Pl.'s Opp'n & Mot. at 3; Geter Aff. ¶ 3.  The employer's determination of the essential functions of the position is afforded significant deference.  See 42 U.S.C. § 12111(8) ("For the purposes of this subchapter, consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job."), 29 C.F.R. § 1630.2 (n)(1)-(3) (defining "essential functions" of a job); Saunders v. Galliher & Huguely Assocs., 741 F. Supp. 2d 245, 248-49 (D.D.C. 2010) ("Courts frequently defer to the employer's judgment as to what functions of a job are essential.") (citing Kalekiristos v. CTF Hotel Mgmt. Corp., 958 F. Supp. 641, 660 (D.D.C. 1997)).  Geter contends that his reasonable accommodation included a complete ban on him driving any trucks.  See Pl.'s Opp'n & Mot. at 3 ("When his doctor put him on light duty with lifting

restrictions of less than 10-15 pounds, Plaintiff could not drive a GPO truck . . . ."); id. at 5 ("When Simms directed Geter to go retrieve a truck he violated the light duty restrictions and the reasonable accommodations given to Geter by GPO.").

For Geter to be qualified under the statute, Geter must be able to drive a truck -- an essential function of his job -- with or without his reasonable accommodation.  If Geter's proposed reasonable accommodation -- not driving any trucks -- prohibits him from doing the essential function of his job -- driving trucks, then he cannot perform the essential functions of his job with a reasonable accommodation.  Geter contends that he could not perform the essential functions of his job even without the reasonable accommodation, because he could not drive a truck at all.  See Pl.'s Opp'n & Mot. at 3 ("When his doctor put him on light duty with lifting of less than 10-15 pounds, [Geter] could not drive a GPO truck. . . .") (emphasis added); see also Geter Aff. ¶ 9 ("I . . . could not  . . . drive."). Therefore, Geter is not a qualified individual under the ADA.

Although Geter could not perform his job with or without a reasonable accommodation, Geter now contends that, "he should have been given a desk job to accommodate his disability and not [have been] required to drive a truck."  Pl.'s Opp'n & Mot. at 20.  "[A]n employer is not required to provide an employee that

accommodation he requests or prefers, the employer need only

provide some reasonable accommodation." Aka v. Washington Hops.

Ctr., 156 F.3d 1284, 1305 (D.C. Cir. 1998) (citations omitted).

> To determine the appropriate reasonable accommodation
> it may be necessary for the covered entity to initiate
> an informal, interactive process with the individual
> with a disability in need of the accommodation.  This
> process should identify the precise limitations
> resulting from the disability and potential reasonable
> accommodations that could overcome those limitations.

29 C.F.R. § 1630.2 (o)(3)(emphasis added); see also Lenkiewicz

v. Castro, Civil Action No. 13-0261 (RCL), 2015 WL 7721203, at

*3 (D.D.C. Nov. 30, 2015) ("In determining the appropriate

reasonable accommodation, the government has the burden," under

the Rehabilitation Act, to initiate this conversation.)

(citations omitted).  "The process contemplated is a 'flexible

give-and-take' between employer and employee 'so that together

they can determine what accommodation would enable the employee

to continue working.'"  Stewart v. White, 118 F. Supp. 3d 321,

324-25 (D.D.C. 2015) (quoting Ward v. McDonald, 762 F.3d 24, 32

(D.C. Cir. 2014)) (emphasis added).

It is unclear whether the GPO considered reassignment to

another position as a reasonable accommodation.  See generally,

Def.'s Summ. J. Mot.; Def.'s Reply.  The D.C. Circuit has

interpreted the ADA to require employers to consider whether

reasonable accommodation could include reassignment.  See 29

C.F.R. 1630.2(o)(1)(2)(ii) ("Reasonable accommodation may

include but is not limited to . . . reassignment to a vacant

position."); see also Aka, 156 F.3d at 1301 ("An employee

seeking reassignment to a vacant position is thus within the

definition if, with or without reasonable accommodation, she can

perform the essential functions of the employment position to

which she seeks reassignment.").  The GPO claims that it

provided Geter a reasonable accommodation by adhering to the

doctor's orders by putting him on light duty, restricting his

weight lifting, "letting his supervisors know that he had a 45lb

weight limit," having "him mostly standing in the platform," and

"reporting to the Safety Department for classes."  Def.'s Summ.

J. Mot. at 12; see also Def.'s Reply at 4.  If reassignment to a

desk job was a reasonable accommodation for Geter, then the test

is not only whether Geter can perform the essential functions of

his original position as a motor vehicle operator, but whether

Geter can perform the essential functions of a vacant desk job.

However, the record is devoid of any request by Geter for

reassignment to another position, let alone a vacant desk job.

"An underlying assumption of any reasonable accommodation claim

is that the plaintiff-employee has requested an accommodation

which the defendant-employer has denied."  Flemmings v. Howard

Univ., 198 F.3d 857, 862 (D.C Cir. 1999) (denying a claim that

Howard University failed to accommodate plaintiff when it

refused to allow plaintiff to work on a revised work schedule,

because plaintiff failed to provide evidence of her request for the revised work schedule).  So, "'[t]o create an issue for the jury' plaintiff must point to 'sufficient evidence' in the record showing that []he requested an accommodation and 'that, after the request, [defendant] refused to make an accommodation.'"  Stewart, 118 F. Supp. 3d at 325 (quoting Stewart v. St. Elizabeths Hosp., 589 F.3d 1305, 1308 (D.C. Cir. 2010)); see also Badwal v. Bd. of Trs. of Univ. of D.C., Civil Action No. 12-cv-2073 (KBJ), 2015 WL 5692842, at *10 (D.D.C. Sept. 28, 2015) ("While plaintiff is correct in that an employer has an obligation to engage in an interactive process to determine a reasonable accommodation, such an obligation is only triggered where the employee has actually requested a reasonable accommodation.") (citations omitted); Evans v. Davis Mem'l Goodwill Indus., 133 F. Supp. 2d 24, 28 (D.D.C. 2000) ("While plaintiff cites an obligation to engage in an 'interactive process' with a disabled employee, this obligation is generally only triggered by an affirmative request.") (citing Flemmings, 198 F.3d 857).

Because Geter never requested to be reassigned to a vacant desk job as a reasonable accommodation, it cannot be said that the GPO failed to provide Geter the reasonable accommodation of reassignment to a vacant desk job.  Therefore, because Geter has admitted that he cannot perform the essential functions of his

job as a motor vehicle operator even with a reasonable

accommodation -- let alone without, the GPO will be granted

summary judgment on his accommodation claim.


IV.  RETALIATION

Geter also alleges that his supervisor retaliated against

him.  See Compl. ¶ 8.  Geter does not clarify whether he is

bringing a retaliation claim under Title VII of the Civil Rights

Act or the ADA.  See id.  Because Geter referenced Title VII of

the Civil Rights Act by statute number in his complaint and the

elements of a retaliation claim are the same under both

statutes, his claim will be construed as retaliation in

violation of Title VII of the Civil Rights Act.  "Courts analyze

retaliation claims under the McDonnell Douglas framework."

Banks v. Vilsack, 932 F. Supp. 2d 185, 192 (D.D.C. Mar. 26,

2013) (citing Jones v. Bernanke, 557 F.3d 670, 677 (D.C. Cir.

2009)).  Under the McDonnell Douglas burden-shifting framework

the plaintiff carries the initial burden to establish a prima

facie case of retaliation.  McDonnell Douglas Corp. v. Green,

411 U.S. 792, 802 (1973); see also Wiley v. Glassman, 511 F.3d

151, 155 (D.C. Cir. 2007).  In order to establish a retaliation

claim, Geter has to show: he "1) engaged in a statutorily

protected activity; 2) suffered a materially adverse action by

[his] employer; and that 3) a causal connection existed between

the two." Nurriddin v. Bolden, 818 F.3d 751, 758 n.6 (D.C. Cir. 2016) (citing Wiley, 511 F.3d at 155)).  If "the employer proffers a non-retaliatory reason for the challenged employment action, the burden-shifting framework falls away, and the 'central question' becomes whether 'the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted nondiscriminatory [or non-retaliatory] reason was not the actual reason and that the employer intentionally discriminated [or retaliated] against the employee.'" Allen v. Johnson, 795 F.3d 34, 39 (D.C. Cir. 2015) (quoting Brady v. Office of Sergeant at Arms, 520 F.3d 490, 494 (D.C. Cir. 2008) (alterations in original).  "'[A] court reviewing summary judgment looks to whether a reasonable jury could infer . . . retaliation from all the evidence,' which includes not only the prima facie case but also the evidence the plaintiff offers to 'attack the employer's proffered explanation for its action' and other evidence of retaliation." Jones, 557 F.3d at 676-77 (quoting Carter v. Geo. Wash. Univ., 387 F.3d 872, 878 (D.C. Cir. 2004)).

Geter contends that he "can show that his firing for AWOL by Simms and Robinson," presumably in August 6, 2009, "and his filing with the MSPB and its decision to reinstate him in November 2009 is the reason why Simms tried to hurt him and force him to get a truck while he was on light duty" on August

17, 2010.  Pl.'s Opp'n. & Mot. at 12.  But, because Geter cannot show that the GPO retaliated against him, his claim fails.

The Court assumes without deciding that Geter can satisfy the first prong of a prima facie case of retaliation -- that he has engaged in statutorily protected activity.  "[I]nitiation of litigation to vindicate claims of employment discrimination or retaliation" is statutorily protected activity.  Teliska v. Napolitano, 826 F. Supp. 2d 94, 98 (D.D.C. 2011) (citations omitted).  Geter filed an appeal of his August 6, 2009 termination with the MPSB.  See Settlement Agreement.  In order for Geter's appeal to the MSPB to constitute protected activity for purposes of Title VII of the Civil Rights Act, it "must in some way allege discrimination made unlawful by Title VII." Hunter v. District of Columbia, 905 F. Supp. 2d 364, 379 (D.D.C. 2012); see also 42 U.S.C. § 2000e-2(a)(1) (". . . because of such individual's race, color, religion, sex, or national origin").  Because the record fails to include the basis of Geter's appeal to the MSPB, the Court cannot say definitively that it was protected activity.  But the Court assumes without deciding that it was, because Geter's retaliation claim fails on the causation element.  Accommodation requests are also considered protected activity.  Solomon, 763 F.3d at 15 ("[W]e join our sister circuits in holding that the act of requesting in good faith a reasonable accommodation is a protected

activity."). Geter also asserts that he sought reasonable accommodation during the August 17, 2010 incident, which would be statutorily protected activity. See Pl.'s Opp'n & Mot. at 4 ("On August 17, 2010 before driving the truck, Geter informed Simms that he was on light duty and not supposed to drive a truck."); Geter Aff. ¶ 10 ("I informed Mr. Simms that I was on light duty and could not and was not supposed to drive.").

Similarly, Because Geter's claim fails on the causation element, the Court assumes without deciding that Geter can satisfy the second prong of a prima facie case of retaliation -- that he suffered a materially adverse action. A materially adverse action is any employer action that "might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Gray v. Foxx, Civil Action No. 14-5306, 2015 WL 9309101, at *4 (D.C. Cir. Dec. 18, 2015) (per curiam) (quoting Baird v. Gotbaum, 662 F.3d 1246, 1248 (D.C. Cir. 2011)). Geter argues that Simms's requiring Geter to lift himself into a truck and drive the truck is a materially adverse action. See Pl.'s Opp'n & Mot. at 12. Although asking an employee to do his job is seemingly not a materially adverse action, Geter argues that Simms's request to have Geter drive the GPO truck and lift his 300 pound body into the truck, despite being on a 10 pound lifting restriction, was a materially adverse action. Because Geter's claim fails

nonetheless, the Court assumes without deciding that Simms's request was materially adverse.

Geter cannot satisfy the third prong of a prima facie case of retaliation because he cannot show a causal connection between the statutorily protected activity and the materially adverse action.  With respect to the causation element of a retaliation claim, a plaintiff can overcome the absence of direct evidence of retaliation by demonstrating "that the employer had knowledge of the employee's protected activity, and that the adverse personnel action took place shortly after that activity."  Rattigan v. Gonzales, 503 F. Supp. 2d 56, 76 (D.D.C. 2007) (quoting Mitchell v. Baldridge, 759 F.2d 80, 86 (D.C. Cir. 1985)).  A plaintiff can rely on temporal proximity to establish a prima facie case of retaliation, "but only where the two events are very close in time."  Hamilton v. Geithner, 666 F.3d 1344, 1357 (D.C. Cir. 2012) (emphasis added) (citations omitted); see also Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001).  Geter failed to provide adequate support for his claim that his challenge of his termination before the MSPB and its decision to reinstate him in November 2009 caused Simms and Robinson to retaliate against him by requiring him to drive a GPO truck in August 2010.[17]  Geter relies exclusively on the

---

[17] To the extent that Geter claims that Simms requested that he drive the delivery truck in retaliation for his request for

bald assertion that the two events are related, despite the
reinstatement and the August 17, 2010 incident occurring nearly
a year apart.  See Mayers v. Laborers' Health & Safety Fund of
N. Am., 478 F.3d 364, 369 (D.C. Cir. 2007) (holding that an
eight- or nine-month gap between the final protected activity
and the alleged retaliation as too long a period of time to
infer causation).  To buttress this bald assertion, Geter
attempts to offer Simms's and Robinson's comments to support his
claim of retaliation.  Pl.'s Opp'n & Mot. at 10 ("This action is
also based on the retaliation by Robinson and Simms against
Geter which is evidenced by them making statements that Geter

---

reasonable accommodation, that claim would fail because Geter's
request occurred after Simms gave the instruction to Geter for
him to drive the truck.  See Pl.'s Opp'n & Mot. at 4 (First,
"Simms directed Geter to go drive a truck from the lower lot up
to the [p]latform and return a truck from the [p]latform to the
lower lot, [then] Geter told Simms that he was on light duty.");
Geter Aff. ¶¶ 9-10 (First, Geter "was ordered to go get a truck
from the lower lot to drive it to the [p]latform [then Geter]
informed Mr. Simms that [he] was on light duty and could not and
was not supposed to drive.").  It is axiomatic that if an
alleged retaliatory act preceded the protected activity, there
is no causal connection to support a retaliation claim.  See
Payne v. Salazar, 899 F. Supp. 2d 42, 53 (D.D.C. 2012) ("For
obvious reasons . . . a plaintiff cannot base a retaliation
claim on events that took place prior to the time she first
engaged in EEO activity."); Duberry v. Inter-Con Sec. Sys. Inc.,
898 F. Supp. 2d 294, 299 (D.D.C. 2012) ("[A]s a matter of law
and logic, the subsequent event could not have caused the
preceding event."); Lewis v. District of Columbia, 653 F. Supp.
2d 64, 79 (D.D.C. 2009) ("The fact that the allegedly
retaliatory actions preceded the protected activity precludes a
determination that the protected activity caused the defendant
to retaliate against the plaintiff.").

was not hurt and that he was faking."); id. at 11 ("After his reinstatement Simms and Robinson started stating that Geter was not hurt and was faking."); id. at 16 ("Simms told many persons that he did not believe that Geter was hurt and therefore believed that he was faking.").  But their comments mention nothing of Geter's MSPB challenge or the November 2009 reinstatement as the basis for any of their actions.[18]

Thus, plaintiff has failed to state a prima facie case of retaliation.  And plaintiff provides no other evidence of retaliation.  Hence, based on the entire record, because there is no causal connection between Geter's claimed materially adverse personnel action and Geter engaging in statutorily protected activity, no reasonable juror could conclude that the GPO retaliated against Geter.  Accordingly, the GPO is granted summary judgment for the retaliation claim.


IV.  HARASSMENT

Geter further claims that the GPO harassed him.  See Compl. ¶ 8, 10; Def.'s Summ. J. Mot. at 8; EEO Decision at 2; EEO Acceptance Letter; Pl.'s Opp'n & Mot at 9, 11, 17.  Geter does not clarify what type of harassment cause of action he is

---

[18] In fact, at least portions of the medical records would support Simms's and Geter's skepticism concerning Geter's ability to drive a truck.

bringing.  See Park, 71 F.3d at 908 (barring claim for harassment from a hostile work environment because the plaintiff's EEOC complaint "not only lacks the words 'hostile work environment,' but also lacks any factual allegations supporting such a claim").  Reviewing the record and briefings, Geter's claim will be construed as a claim of harassment creating a retaliatory hostile work environment under Title VII of the Civil Rights Act and harassment because of his alleged disability under the ADA.

Although Geter has not alleged claims based on being a member of a protected class enumerated under Title VII of the Civil Rights Act, this Circuit has "recognized a special type of retaliation claim based on a hostile work environment" where the plaintiff suffers harassment because of his or her having engaged in a statutorily protected activity.  Baird, 792 F.3d at 168-69 (assuming without confirming that "Baird['s] claim[] that, in retaliation for her Title VII activities, the PBGC made her work environment a hostile one" is a cognizable cause of action under Title VII of the Civil Rights Act); see also 42 U.S.C. § 2000e-2(a) ("It shall be an unlawful employment practice for an employer to . . . discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin.").  Even though Geter has not formally alleged a retaliatory hostile work environment charge,

the Court will assume that it is properly before the Court as a claim that is "'like or reasonably related to the allegations of the [administrative] charge and growing out of such allegations.'" Jones v. Billington, 12 F. Supp. 2d 1, 7 (D.D.C. 1997) (citations omitted); see also Roberson v. Snow, 404 F. Supp. 2d 79, 95-96 (D.D.C. 2005).

Title VII of the Civil Rights Act prohibits employers from "requiring people to work in a discriminatorily hostile or abusive environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (quoting Meritor Savs. Bank, FSB v. Vinson, 477 U.S. 57, 64 (1986)); see also 42 U.S.C. § 2000e et seq.; Vance v. Ball State Univ., 133 S. Ct. 2434, 2441 (2013). "Under Title VII, harassing an employee on the basis of [his] membership in a protected class is unlawful when it amounts to discrimination that expressly or constructively alters the employee's 'terms, conditions, or privileges of employment.'" Banks, 932 F. Supp. 2d at 193 (quoting 42 U.S.C. § 2000e-2(a)(1)) (other citations omitted). "To determine whether a hostile work environment exists, the court looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." Baloch v. Kempthorne, 550 F.3d 1191, 1201 (D.C. Cir. 2008) (citing Faragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998)).

Essentially, "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment . . . Title VII is violated." Harris, 510 U.S. at 21 (citations omitted); see also Brooks v. Grundmann, 748 F.3d 1273, 1276 (D.C. Cir. 2014). Title VII does not permit the court to be the enforcer of a "general civility code" but, instead, if the standard is "properly applied, [the standard] will filter out complaints attacking 'the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing.'" Faragher, 524 U.S. at 788 (citations omitted). To amount to a change in the terms and conditions of employment, the hostile "conduct must be extreme". Id.

To "state a [retaliatory] hostile work environment claim, a plaintiff has to show that [he] suffered harassment because of [his] protected activity . . ., 'that [his] employer knew or should have known of the alleged harassment and failed to take remedial action, and that the hostile environment interfered with [his] work.'" Banks, 932 F. Supp. 2d at 193 (citations omitted); see also Napolitano, 826 F. Supp. 2d at 98. The prima facie elements of

> [a] claim for harassment based on disability, . . .
> would require a showing that: (1) [plaintiff] is a
> qualified individual with a disability . . .; (2) [he]
> was subject to unwelcome harassment;(3) the harassment
> was based on [his] disability or a request for an
> accommodation; (4) the harassment was sufficiently
> severe or pervasive to alter the conditions of [his]
> employment and to create an abusive working
> environment; and (5) that [GPO] knew or should have
> known of the harassment and failed to take prompt
> effective remedial action.

Brown v. Small, Civil Action No. 02-1268 (RWR), 2005 WL 736530,
at *3 (D.D.C. 2005) (quoting Walton v. Mental Health Ass'n of
Se. Pa., 168 F.3d 661, 667 n.2 (3d Cir. 1999)) (alterations in
original).

But the GPO asserts that plaintiff's harassment claims fail
because he cannot establish that GPO created a retaliatory
hostile work environment or that the GPO harassed Geter because
of his disability.  The GPO contends that Geter's "unwelcome[d]
harassment" was merely "workplace dissatisfaction, which the
Courts have made clear [does] not amount to a hostile work
environment."  Def.'s Summ. J. Mot. at 17.  Plaintiff's claims
of retaliatory hostile work environment and harassment because
of his disability are based solely on his contention that the
GPO retaliated against him by forcing him to drive a GPO truck
because he filed with the MSPB in August 2009 and the GPO and
Geter reached a settlement agreement to reinstate him in
November 2009.  Pl.'s Opp'n & Mot. at 10-12; see also id. at 11
("On August 17, 2010 when Simms ordered Geter to drive a truck

while he was on light duty, was a clear act of harassment
. . . .").

The GPO's request for Geter to drive the GPO truck on
August 17, 2010 was essentially the GPO requesting that Geter do
his job.  Asking someone to do their job cannot form the basis
of retaliatory hostile work environment because it does not
amount to the level of "intimidation, ridicule, and insult . . .
that is sufficiently severe or pervasive to alter the conditions
of the victim's employment and create an abusive working
environment."  Harris, 510 U.S. at 21 (internal quotation marks
and citations omitted); see also Faragher, 524 U.S. at 788
(citations omitted) ("[I]solated incidents (unless extremely
serious) will not amount to discriminatory changes in the 'terms
and conditions of employment'"); Hussain v. Nicholson, 435 F.3d
359, 367 (D.C. Cir. 2006) (citing Singletary v. District of
Columbia, 351 F.3d 519, 526 (D.C. Cir. 2003)) (exploring a case
where the court declined "to grant summary judgment against an
employee claiming hostile work environment where, for over a
year and a half, the employee was forced to work in a poorly
lit, unheated, and unventilated storage room full of brooms and
boxes of debris"); Houston v. SecTek, Inc., 680 F. Supp. 2d 215,
224 (D.D.C. 2010) (surveying D.C. Circuit cases where the court
did not find sufficient evidence to support a hostile work
environment claim).

Geter also complains of harsh comments from his supervisors.  Pl.'s Opp'n & Mot. at 16-17 ("Simms retaliated against Geter by ordering him to drive the truck or be placed off the clock and be escorted out of the building by GPO police. This action is nothing short of harassment and retaliation."); id. at 16 ("There is no question that Simms told many persons that he did not believe that Geter was hurt and therefore believed that he was faking.").  The Court, however, is not the police of a "general civility code."  Faragher, 524 U.S. at 788. Because Geter fails to establish a factual basis that he was subjected to severe or pervasive harassment, the GPO is granted summary judgment on Geter's claim of a retaliatory hostile work environment or harassment because of plaintiff's alleged disability.


## CONCLUSION

For the foregoing reasons, the Government Publishing Office's motion for summary judgment (ECF No. 35) will be GRANTED.  Mr. Geter's motion for summary judgment (ECF No. 40) will be DENIED.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.


Dated:  June 23, 2016          RUDOLPH CONTRERAS
                               United States District Judge